**SO ORDERED.**

**SIGNED this 15 day of January, 2015.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:

| | |
|---|---|
| **WALTER KEVIN BRANTLEY** <br> **DEBRA CARLISLE BRANTLEY** <br> <br> Debtors | **CASE NO. 13-00483-8-DMW** <br> <br> <br> **CHAPTER 13** |

| | |
|---|---|
| **WALTER KEVIN BRANTLEY** <br> **DEBRA CARLISLE BRANTLEY** <br> <br> Plaintiffs <br> <br> vs. <br> <br> **CITIFINANCIAL, INC.** <br> **CFNA RECEIVABLES (DE), INC.** <br> <br> Defendants | <br> <br> <br> <br> **ADVERSARY PROCEEDING** <br> **NO. 13-00197-8-DMW** |

## ORDER DENYING MOTION TO APPROVE SETTLEMENT

This matter comes on to be heard upon the Motion to Approve Settlement of Adversary Proceeding ("Motion") filed by Walter Kevin Brantley and Debra Carlisle Brantley

("Plaintiffs").  The court conducted a hearing in Raleigh, North Carolina on October 28, 2014.  R. Lee Roland IV, Esq. appeared on behalf of the Plaintiffs.  Jackson Wicker, Esq. appeared on behalf of CitiFinancial, Inc. ("CitiFinancial") and CFNA Receivables (DE), Inc. ("CFNA") (collectively "Defendants").  Based upon the pleadings and the arguments of counsel, the court makes the following findings of fact and conclusions of law:

A.    BACKGROUND

1.    The Plaintiffs filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on January 24, 2013 ("Petition Date").  John F. Logan, Esq. ("Trustee") was appointed as trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

2.    The Plaintiffs own real property in Nash County, North Carolina ("Property") and pledged the Property in the form of a second priority deed of trust ("DOT") to secure a promissory note ("Note") to CitiFinancial Services, Inc.  On October 1, 2013 CitiFinancial Services, Inc. changed its name to CFNA.

3.    CFNA assigned the Note and DOT to CitiFinancial Servicing, LLC as evidenced by the filing of an assignment on November 7, 2013 in the Nash County Register of Deeds.  CitiFinancial Services, Inc. (now CFNA) filed the original proof of claim in this case.  CitiFinancial Servicing, LLC, who is the holder of the Note, filed the amended proof of claim.[1]

4.    According to the schedules filed with the court, the Plaintiffs are also indebted to CitiFinancial (as defined above and not CitiFinancial Servicing, LLC) on an unsecured loan with a balance of approximately $5,875.00.

5.    Due to health care expenses, the Plaintiffs became delinquent on their pre-petition payments on the Note.

---

[1] The Plaintiffs alleged in their Complaint that CFNA holds the Note and DOT.  CitiFinancial and CFNA admitted this allegation in their combined Answer.  The similarity of the names is confusing, but for the purposes of this Order, the name of the holder of the Note is not critical.

6.  On November 15, 2013, the Plaintiffs filed a complaint ("Complaint") against the Defendants, alleging actual and punitive damages, including statutory damages and attorney's fees, for the Defendants' failure to comply with 11 U.S.C. § 362 and Article 2 of Chapter 75 of the North Carolina General Statutes, entitled "Prohibited Acts by Debt Collectors."  The Complaint alleges, among other things, the following:

  a.  The Defendants made numerous pre-petition phone calls[2] to the Plaintiffs in an attempt to collect the delinquent debt;

  b.  The Defendants sent a post-petition letter to the Plaintiffs claiming to offer a solution to the delinquency; and

  c.  The Defendants drafted loan payments from the Plaintiffs' bank account on two occasions after the Petition Date, withdrawing a total of $738.84 and resulting in $105.00 in overdraft fees charged to the Plaintiffs.

7.  On July 17, 2014, the Plaintiffs filed the Motion that includes the terms of the Settlement Agreement and Release of all Claims ("Settlement").  Under the Settlement the Defendants are to pay the amount of $49,000.00 to the Plaintiffs in exchange for Plaintiffs' dismissal with prejudice of their claims against Defendants.  The contingency fee agreement between the Plaintiffs and their counsel provides two-thirds of the $49,000.00 ($32,666.67) will be paid to the Plaintiffs as their settlement proceeds ("Settlement Proceeds"), and one-third ($16,333.33) will be paid to Plaintiffs' counsel.

8.  On the same day the Plaintiffs filed the Motion, the Plaintiffs filed an amended Schedule C in their bankruptcy case that listed the Settlement Proceeds as exempt, claiming that

---

[2] In the Answer filed by the Defendants on January 17, 2014, the Defendants denied most of the allegations regarding phone calls being made to the Plaintiffs.  At the hearing on the Motion, counsel for the Plaintiffs stated that through discovery, the Plaintiffs had obtained documents corroborating their allegations of phone calls.  That document has not been presented to the court.

3

money was compensation for personal injury under N.C. Gen. Stat. § 1C-1601(a)(8). No party-in-interest objected to the amended exemptions.

9. The Plaintiffs assert that in light of the anxiety Plaintiffs sustained as a result of Defendants' actions, the Settlement is fair and reasonable, it constitutes compensation for personal injury, and because no party-in-interest objected to the exemption, the exemption should be automatically allowed.

B. JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

C. DISCUSSION

1. Court's Review of the Settlement

a. Rule 9019(a) of the Federal Rules of Bankruptcy Procedure states that the court may approve a settlement agreement. A bankruptcy court "has the authority to approve a compromise of a claim pursuant to Bankruptcy Rule 9019(a)." *Terry v. Sparrow*, 328 B.R. 442, 447 (M.D.N.C. 2005) (quoting *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995)). The motion to approve a settlement squarely places the approval of any settlement within the jurisdiction of this court. The parties have requested the court to approve the Settlement, and that request will be denied.

b. "Courts generally favor settlement of controversies arising in the administration of a bankruptcy estate and deference is to be given to the responsible

4

official's judgment in agreeing to the [s]ettlement." *Maloy v. Sigmon (In re Maloy)*, 2009 Bankr. LEXIS 4010, at *10 (Bankr. W.D.N.C. Dec. 7, 2009) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (U.S. 1968); *In the Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (S.D.N.Y. 1984)).

    c.    A court's acceptance or rejection of a settlement must be based on an "informed and independent judgment as to whether a proposed compromise is fair and equitable." *Protective Comm.*, 390 U.S. at 424. The court's "overriding concern . . . is to determine . . . whether the [s]ettlement is proper under law and whether it is *fair and equitable* and in the best interest of all interested parties." *Maloy*, 2009 Bankr. LEXIS at *11 (emphasis added).

    d.    Also, any settlement must be reasonable and a "bankruptcy court's decision to approve [a proposed] settlement . . . must be an informed one based upon an objective evaluation of developed facts." *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989). "[A] bankruptcy judge may not simply accept [the proponent's] word that the settlement is reasonable, nor may [the judge] merely 'rubber stamp'" a proposed settlement without an individual determination that the settlement is reasonable. *In re Ionosphere Clubs*, 156 B.R. 414, 426 (S.D.N.Y. 1993). "In determining the reasonableness of a settlement, a bankruptcy judge must decide only whether the settlement falls between the lowest and highest points in the range of reasonableness." *Barrett v. Andre Chreky, Inc. (In re Andre Chreky, Inc.)*, 448 B.R. 596, 609 (D.D.C. 2011) (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2nd Cir. 1983)).

2.    The Settlement in this case is neither fair nor equitable, because it is not reasonably comparative to the damages or injuries allegedly suffered by the Plaintiffs. The sum

5

of $49,000.00 for the alleged stay violations and alleged inconveniences, such as nausea and anxiety, is outside the range of reasonableness in this case.

    3.    <u>Court's Review of the Exemption</u>  Because the Settlement is not being approved, the court is not obligated to explore the propriety of the claimed exemption; however, the Plaintiffs raised the issue in the Motion, and the exemption deserves examination and comment.

    a.    <u>Failure of the Trustee or any Party in Interest to Object</u>

    i.    The Plaintiffs rely on *Williams v. Peyton (In re Williams)*, 104 F.3d 688 (4th Cir. 1997), in their assertion that the exemption should automatically be allowed. *Williams* states that "[i]f the trustee (or other party in interest) fails to object to a claimed exemption within 30 days, then he forfeits his right to so object, and the debtor receives the benefit of the exemption regardless of whether [the debtor] would otherwise be legally entitled to it." 104 F.3d at 689 (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992)).

    ii.    The holding in *Taylor* (on which *Williams* relies) is limited to, and is solely based upon, an interpretation of Rule 4003(b) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. § 522(l).[3] Rule 4003(b) establishes a 30-day period for objecting to exemptions, and § 522(l) states that "[u]nless a party in interest objects, the property claimed as exempt . . . is exempt." Fed. R. Bankr. P. 4003(b); 11 U.S.C. § 522(l).

    iii.    Further, *Taylor* "establishes and applies the straightforward proposition that an interested party must object to a claimed exemption if the

---

[3] The court stated that it "decline[d] to consider § 105(a) in this case because [the trustee] raised the argument for the first time in his opening brief on the merits[, and USCS Supreme Ct. R.] 14.1(a) makes clear that 'only the questions set forth in the petition [for certiorari], or fairly included therein, will be considered by the Court' . . ." *Taylor* at 645.

6

amount the debtor lists as the 'value claimed exempt' is not within statutory limits." *Schwab v. Reilly*, 560 U.S. 770, 790 (U.S. 2010). In this case, the Plaintiffs' scheduled exemption was within the statutory limits, and thus raised no "warning flags" warranting an objection from the Trustee. *Id.* at 789; *see In re Gregory*, 487 B.R. 444, 448 (Bankr. E.D.N.C. 2013) (finding that the trustee had no obligation to object within the deadline set by Rule 4003 in the context of an action "to retain any value beyond the value of the exempt interest claimed by the debtor" when the exemption was facially valid).

    iv.    Giving debtors the unfettered power to exempt any property, whether the exemption is applicable or not, leads to poor choices. Hoping that the trustee will not "catch" an improperly claimed exemption is not the mark of an honest debtor who seeks a discharge. It encourages debtors "to claim [all of their] property [as] exempt, thus leaving it to the trustee and creditors to sift through the myriad claimed exemptions to assess their validity." *Taylor*, 503 U.S. at 649 (Stevens, J., dissenting) (citing *In re Bennett*, 36 B.R. 893, 895 (Bankr. W.D. Ky. 1984)). "Such a policy would result in reversion to 'the law of the streets, with bare possession constituting not nine, but ten, parts of the law; orderly administration of estates would be replaced by uncertainty and constant litigation if not outright anarchy.'" *Id.* (quoting *Bennett*, 36 B.R. at 895).

b.    <u>Personal Injury Exemption</u>

    i.    The Plaintiffs contend in the Motion that the Settlement Proceeds are exempt under N.C. Gen. Stat. § 1C-1601(a)(8) because they are "compensation for personal injury."

  ii.  The Supreme Court recently held in *Law v. Siegel* that "courts are not authorized to create exceptions" to the exemptions enumerated in § 522. 134 S. Ct. 1188, 1196 (U.S. 2014).  When a debtor claims an exemption under state law, as opposed to under the federal exemptions listed in § 522, the scope of the exemption is determined by applying state law. *Id.* at 1197.  The court must evaluate whether the claims fall within the definition of personal injury under North Carolina law, and whether the exemption is available.

  iii.  The Plaintiffs cite *In re LoCurto*, 239 B.R. 314 (Bankr. E.D.N.C. 1999) to support their assertion that personal injury is not limited to bodily injury under North Carolina law. 239 B.R. at 318 ("§ 1C-1601(a)(8) is not limited to bodily injury and may include injuries for mental anguish.").  The court agrees that the definition of personal injury is not limited to a physical bodily injury under North Carolina law; however, in order to fall under the exemption, the injury leading to the compensation should rise to a level of severe emotional distress.  In other words, mere stress and inconvenience, while certainly a basis for sanctions or damages, do not qualify as personal injuries.

  iv.  In this case, the Complaint alleges that the female Plaintiff suffered from anxiety, headaches, nausea and depression because of the Defendants' phone calls, but the Complaint contains no specific allegations that those manifestations rose to the level of personal injury.  The first assertion that any proceeds from the Adversary Proceeding would constitute compensation for personal injury is found in an amended Schedule C filed by the Plaintiffs in their bankruptcy case on November 13, 2013. The Plaintiffs' wildcard exemption was fully claimed, and it

appears the personal injury exemption was the Plaintiffs' only option to keep the anticipated proceeds out of the bankruptcy estate.

v.      The Motion also quotes the Fair Debt Collection Practices Act ("FDCPA"), which states that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). While emotional distress may be a component of the damages awarded under the FDCPA, the granting of "consequential damages for emotional or physical distress" caused by FDCPA violations does not *necessarily* transform a plaintiff's claim into a personal injury tort claim. *Crossley v. Lieberman*, 90 B.R. 682, 692 (E.D. Pa. 1988) (holding that the plaintiff's claim for violation of the FDCPA was not a personal injury tort claim for purposes of 28 U.S.C. § 157(b)(5)).

vi.     Similarly, in *Elkes Dev., LLC v. Arnold (In re Arnold)*, 407 B.R. 849 (Bankr. M.D.N.C. 2009), the court concluded that the plaintiffs' state law claim for unfair and deceptive trade practices, a cause of action brought under Chapter 75 of the North Carolina General Statutes[4] just like Plaintiffs' state law claims, was not a personal injury tort claim within the meaning of 28 U.S.C. § 157(b)(5). 407 B.R. at 853.

vii.    Although *Crossley* and *Arnold* address the bounds of "personal injury tort" within the context of determining jurisdiction under 28 U.S.C. § 157(b)(5),[5] they are instructive because if a claim does not qualify as a personal

---

[4] The plaintiffs in *Arnold* brought their claim pursuant to N.C. Gen. Stat. § 75-1.1, commonly known as the North Carolina Unfair and Deceptive Trade Practices Act. *Arnold*, 407 B.R. at 850.

[5] While the Plaintiffs assert the Settlement Proceeds constitute compensation for personal injury, they maintain that this Adversary Proceeding is a core proceeding. If the Plaintiffs' claims were held to be personal injury tort

injury tort claim, it does not make sense to sweepingly qualify all damages awarded for that claim as compensation for personal injury, notwithstanding the broader scope of what constitutes personal injury under North Carolina law.

viii.   Plaintiffs' claim brought pursuant to 11 U.S.C. § 362 should also not yield purely "personal injury" damages.  The language of § 362(k) states that a plaintiff injured by a willful stay violation "shall recover *actual* damages, including costs and attorneys' fees, and, *in appropriate circumstances*, may recover punitive damages." 11 U.S.C. § 362(k)(1) (emphasis added).

ix.   The Motion fails to separate the proceeds into what may be for actual damages (*e.g.,* compensation for the funds drafted out of Plaintiffs' account and for overdraft fees that were incurred), versus what portion is meant to represent punitive damages related to Plaintiffs' emotional distress.  Instead of apportioning the Settlement Proceeds into these categories, which could potentially result in some of the funds being exempt from the reach of creditors due to their nature as actual damages, the Motion simply declares that because the Plaintiffs suffered emotional distress, the Settlement Proceeds in their entirety qualify as compensation for personal injury and are exempted from the Plaintiffs' bankruptcy estate.  This conclusion is without sufficient factual support; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1.   The Motion is denied; and

---

claims, they would be outside of this court's jurisdiction pursuant to 28 U.S.C. § 157(b)(5), which orders that "personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending."  Because the Settlement approval is being denied on other grounds, this court retains jurisdiction over the Adversary Proceeding and the Motion.

2. The parties may submit a revised Settlement to the court for approval. Otherwise, the Adversary Proceeding will proceed to trial.

**END OF DOCUMENT**